# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBY LEE MAULE,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>M. D. BITER, Warden,<br><br>　　　　　Respondent. | 1:11-CV-00486 AWI GSA HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, following his conviction by jury trial on October 30, 2008, of murder in the second degree (Cal. Penal Code § 187), and active participation in a criminal street gang (Cal. Penal Code § 186.22(a)). (CT[1] 498-501.) Firearm and criminal street gang enhancements were also determined to be true. (Id.) Petitioner was sentenced to serve a determinate term of three years plus an indeterminate term of 55 years

---

[1] "CT" refers to the Clerk's Transcript on Appeal.

1

to life in state prison. (Id.)

Petitioner filed a timely notice of appeal. On May 10, 2010, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned decision, but modified the sentence. (See Resp't's Answer, Ex. 1.) On July 13, 2010, Petitioner filed a petition for review in the California Supreme Court. (LD[2] 5.) The petition was summarily denied on August 11, 2010. (LD 5.)

On March 23, 2011, Petitioner filed the instant federal habeas petition. He presents the following claims for relief: 1) He contends there was insufficient evidence to support the criminal street gang enhancement in violation of his federal due process rights; and 2) He asserts the trial court erred in admitting prejudicial gang evidence which deprived him of a fair trial in violation of this federal constitutional rights. On June 27, 2011, Respondent filed an answer to the petition. Petitioner did not file a traverse. Petitioner did, however, file an interlocutory appeal to the Ninth Circuit Court of Appeals, but the appeal was denied.

## STATEMENT OF FACTS[3]

> At a party in Merced, members of two Merced subsets of the Norteño criminal street gang exchanged gang taunts with members of the West Coast Outlaws, an Atwater criminal street gang with ties to neither Norteños nor Sureños. Afterward, two Norteños, Robby Lee Maule and Raul Herrera, confronted members of the West Coast Outlaws in a garage off a nearby alley. As Herrera stood behind him, Maule fired two shots into the garage. Korey Suttles, a member of the West Coast Outlaws, died of a gunshot wound.

(See Resp't's Answer, Ex. 1.)

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Petitioner asserts that he suffered violations of his rights as

---

[2] "LD" refers to the documents lodged by Respondent with his response.

[3] The Fifth DCA's summary of the facts in its May 10, 2010, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the Fifth DCA.

2

guaranteed by the U.S. Constitution.  The challenged conviction arises out of Merced County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lockyer v. Andrade,  538 U.S. 63, 70 (2003); Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal

3

principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), *quoting* Wright v. Van Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405, *quoting* Webster's Third New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists

4

could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784.  In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id.  If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), *citing* 28 U.S.C. § 2254(e)(1).  However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by,* Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

III.     Review of Claims

   A.   Insufficiency of Evidence of Criminal Street Gang Enhancement

In his first ground for relief, Petitioner claims the evidence was insufficient to support the allegation that he committed the murder with the specific intent to promote, further or assist in criminal conduct by gang members.  He contends there was no evidence in the record to support the gang enhancement apart from the improper gang expert testimony.

Petitioner presented this claim on direct appeal to the Fifth DCA where it was rejected in

5

1   a reasoned decision. (See Resp't's Answer, Ex. 1.) Petitioner then presented the claim to the

2   California Supreme Court in a petition for review and it was denied without comment. (LD 5.)

3   When the California Supreme Court's opinion is summary in nature, the Court must "look

4   through" that decision to a court below that has issued a reasoned opinion. Ylst, 501 U.S. at 804-

5   05 & n. 3. The Fifth DCA analyzed the claim as follows:

> Maule and Herrera argue an insufficiency of the evidence of the criminal street gang enhancements. The Attorney General argues the contrary.
>
> The parties agree that the insufficiency of the evidence issue centers on the gang expert's testimony, over defense objection, about commission of the charged crimes with a specific intent to promote criminal gang activity:
>
> "[PROSECUTOR]: Let me give you a hypothetical. Let's assume the following facts: There is a party. Two members of Norteño gangs are there. There's some kind of contact between them and a group of people from another gang, and one of those individuals throws up something that the Norteños believe is a '3' and contact is made. And someone says, 'what are you throwing up? Are you throwing up a '3'?'
>
> "That confrontation ends, and then there's some disagreement inside where the two individuals are and a question about disrespect comes up and other people are arguing. They're asked to leave. And as they leave, there's back and forth with other members of the other gang that are saying their gang name to these two people. And at one point, one of the individuals says something to the effect, 'we'll be back.' And then a couple of hours later, there's a gang shooting that's done, and those two individuals are picked out as the people that did it.
>
> "Assuming that those facts are true, do you have an opinion as to whether the crime was committed at the direction of, in association with, or for the benefit of a particular group or gang?
>
> "[GANG EXPERT:] A. Yes, sir, I do.
>
> "[PROSECUTOR"] Q. And what is your opinion?
>
> "[GANG EXPERT:] A. My opinion would be that that was for the direct benefit of that criminal street gang.
>
> "[PROSECUTOR:] Q. And your basis for that?
>
> "[GANG EXPERT:] A. Based upon my training and experience in investigations in regards to related gang violence, that would-that's a typical result of gang violence in our community.
>
> "[PROSECUTOR:] Q. And in your opinion, was the crime committed under those facts with a specific intent to promote criminal gang activity?
>
> "[GANG EXPERT:] A. Yes, it was."
>
> After overruling both a defense objection and a defense motion to strike on the

6

ground that the question called for "speculation and a conclusion by the jury," the court permitted the prosecutor to continue questioning the gang expert:

"[PROSECUTOR:] Q. And your basis for that?

"[GANG EXPERT:] A. The basis, again, is on my training and experience in gang investigations. This is, again, what gang members do. They have a very violent life. They do attack rivals. Anybody that interferes with them, violence is a way that they control. Through that violence, they cause fear and intimidation. People don't necessarily want to testify or come forward and cooperate with law enforcement. It makes it easier for them to commit crimes. It also aid[ ]s them in the recruitment of other gang members."

Maule and Herrera argue that, apart from the gang expert's testimony, nothing in the record shows "a specific intent to promote, further or assist in criminal conduct by gang members through such conduct as admissions, desire for revenge against a rival gang, the sale of drugs, or evidence of a retaliatory drive-by shooting was planned." The gang expert's testimony, they argue, "was an ipso facto opinion that this homicide was committed because Mr. Maule and Mr. Herrera intended to promote, further or assist in gang criminal conduct."

The Attorney General apparently concedes as much. He responds to each of Maule and Herrera's other arguments but simply ignores the gang expert's specific intent testimony at the heart of their insufficiency of the evidence argument. (Cf. *People v. Bouzas* (1991) 53 Cal.3d 467, 480, 279 Cal.Rptr. 847, 807 P.2d 1076.) In passing, he cites four cases as authority for the general rule that specific intent "can be proved by evidence that defendant's own criminal conduct was gang related" or by evidence that defendant's intent was "to help [a fellow gang member] commit a crime." (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322, 51 Cal.Rptr.3d 678; *People v. Hill* (2006) 142 Cal.App.4th 770, 774, 47 Cal.Rptr.3d 875; *People v. Romero* (2006) 140 Cal.App.4th 15, 20, 43 Cal.Rptr.3d 862; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1179, 5 Cal.Rptr.3d 615.) The testimony of a gang expert that the crime was committed with a specific intent to promote criminal gang activity was not at issue in any of those cases, however. The rule is settled that cases are not authority for matters not considered. (*People v. Stone* (2009) 46 Cal.4th 131, 140, 92 Cal.Rptr.3d 362, 205 P.3d 272.)

To prove the element of "specific intent to promote, further, or assist in any criminal conduct by gang members" in a criminal street gang enhancement (§ 186.22, subd. (b)(1)), a gang expert may testify about a range of topics like "'the "culture and habits" of criminal street gangs, including testimony about the size, composition or existence of a gang, gang turf or territory, an individual defendant's membership in, or association with, a gang, the primary activities of a specific gang, motivation for a particular crime, generally retaliation or intimidation, whether and how a crime was committed to benefit or promote a gang, rivalries between gangs, gang-related tattoos, gang graffiti and hand signs, and gang colors or attire.' " (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1197, 46 Cal.Rptr.3d 839, citations omitted (*Frank S.*); *People v. Killebrew* (2002) 103 Cal.App.4th 644, 656-657, 126 Cal.Rptr.2d 876 (*Killebrew* ).) A gang expert may *not* testify, however, to whether "a specific individual possessed a specific intent." ( *Frank S., supra,* at p. 1197, 46 Cal.Rptr.3d 839; *Killebrew, supra,* at pp. 657-658, 126 Cal.Rptr.2d 876.)

Here, the gang expert's testimony about specific intent-the only evidence the prosecutor offered on that issue-"simply informed the jury of how he felt the case should be resolved. This was an improper opinion and could not provide substantial evidence to support the jury's finding." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851, 96

7

Cal.Rptr.3d 459.) His "improper opinion on the ultimate issue" was inadmissible. (*Killebrew, supra,* 103 Cal.App.4th at p. 658, 126 Cal.Rptr.2d 876.)

So the Attorney General seeks shelter in other gang evidence. At a party not long before the fatal shooting, Maule and Herrera introduced themselves by name and gang affiliation. Maule said he was from "NFL" (a reference to the "Norteños for Life" subset of the Norteño criminal street gang). Herrera said he was from Dead-End (a reference to the "Dead-End Locs" subset of the Norteño criminal street gang). Gang members commonly introduced themselves in that way. Several people at the party, including Suttles, were members of the West Coast Outlaws, a group the police refer to as a gang but another member refers to as "a bunch of buddies that grew up with each other," "drank together," and "partied together."

After one of the West Coast Outlaw members at the party threw both of his hands up in the air during a song with lyrics about "east side, west side, south side, north side," Maule or Herrera asked him if he was, or if he threw up, a "3" (a sign of the Sureño criminal street gang). He replied in the negative and said that his brother was a Norteño and that no scraps (a pejorative word for Sureños) were at the party.

The Attorney General argues that a "3," "the sign of their hated rival," the Sureño gang, "would have gotten [Maule's and Herrera's] 'machismo' going." The gang expert testified that throwing up a "3" could get a Norteño's machismo going. A witness heard Maule say, "Let me get a gun. These fools are messing with me." Tensions grew as partygoers hurled gang taunts at Maule and Herrera ("Outlaw"), as Maule and Herrera replied in like manner ("NFL" and "Dead-End," respectively), and as Maule or Herrera said, "We'll be back."

"True to their word," the Attorney General summarizes, "[Maule] and Herrera returned armed with a loaded gun later that night, and [Maule] indiscriminately fired at persons he perceived as belonging to the West Coast Outlaws gang. His violent act resulted in the murder of a person he had never met before." Our duty on a claim of insufficiency of the evidence is to examine the whole record in the light most favorable to the judgment below for substantial evidence-that is, credible and reasonable evidence of solid value-on which a reasonable trier of fact could have found the criminal street gang allegation true beyond a reasonable doubt. ( *Killebrew, supra,* 103 Cal.App.4th at p. 660, 126 Cal.Rptr.2d 876.) In the discharge of that duty, we focus on the whole record, not isolated bits of evidence, and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the verdict. (*Id.*)

Shorn of the gang expert's improper opinion on the ultimate issue, the record still contains substantial evidence of the requisite "specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) We reject Maule's and Herrera's argument to the contrary. (*People v. Staten* (2000) 24 Cal.4th 434, 460, 101 Cal.Rptr.2d 213, 11 P.3d 968, citing *Jackson v. Virginia* (1979) 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.)

(See Resp't's Answer, Ex. 1.)

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the

crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. <u>Id</u>. at 324 n.16. On federal habeas review, AEDPA requires an additional layer of deference to the state decision. <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir.2005). This Court must determine whether the state decision was an unreasonable application of the <u>Jackson</u> standard.

Pursuant to Cal. Penal Code § 186.22(b), "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" is punishable with an additional prison term. In this case, there was substantial evidence from which a rational jury could determine that Petitioner committed the murder with the specific intent to promote, further, or assist a criminal street gang. Petitioner complains that the only gang evidence came from the improperly admitted opinion of the gang expert. Not so.

As noted above, the appellate court determined that the gang expert's testimony regarding specific intent was improper opinion and therefore inadmissible. Nevertheless, the court looked at all of the evidence presented and concluded under <u>Jackson</u> that the record still contained substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. The state court determination was not an unreasonable application of <u>Jackson</u>. The appellate court noted that prior to the fatal shooting, Petitioner had introduced himself at the party as a member of the "Nortenos for Life" gang. During the party, Petitioner and his codefendant exchanged gang taunts with other partygoers and threatened to return. Petitioner and his codefendant later did return and proceeded to fire indiscriminately at those perceived to be members of the rival gang. Given the entire record, Petitioner fails to demonstrate that the state court applied <u>Jackson</u> unreasonably. The claim should be rejected. 28 U.S.C. § 2254(d).

B.  <u>Admission of Prejudicial Gang Information</u>

In his next claim for relief, Petitioner argues the gang expert's opinion on whether the murder was committed for the specific intent of promoting a gang was admitted in violation of his constitutional rights.

9

This claim was also presented on direct appeal to the Fifth DCA where it was denied in a reasoned decision. It was also raised before the California Supreme Court where it was rejected without comment. Therefore, the Court must "look through" the California Supreme Court's decision to the appellate court's decision below. Ylst, 501 U.S. at 804-05 & n. 3. In this case, the appellate court rejected the claim as follows:

> Maule and Herrera argue the gang expert's improper opinion about specific intent tainted deliberations on the murder. The Attorney General argues the contrary.
>
> The crux of Maule's and Herrera's argument is that "the identity of the people involved" in the shooting was "the pivotal issue in the case" and that "the prosecution's case was not sufficiently strong to inspire confidence beyond a reasonable doubt" that the error in admitting the gang expert's opinion on specific intent "did not contribute to the murder verdict[s]." The jury's duty was to consider the evidence of the identity of the people involved in the shooting on the murder charges and on the criminal street gang allegations alike. Our duty is not to reweigh the evidence, on the theory that the evidence was close, to determine whether the jury should have reached different verdicts. (*People v. Prince* (2007) 40 Cal.4th 1179, 1281, 57 Cal.Rptr.3d 543, 156 P.3d 1015.) In essence, Maule's and Herrera's argument simply asks us to reweigh the facts. That we cannot do. (*People v. Bolin* (1998) 18 Cal.4th 297, 331-333, 75 Cal.Rptr.2d 412, 956 P.2d 374.)

(See Resp't's Answer, Ex. 1.)

Respondent correctly argues that to the extent Petitioner's challenges a violation of state law, habeas relief is unavailable. See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985). To the extent Petitioner challenges a violation of his federal constitutional rights, habeas relief is also unavailable. There is no Supreme Court authority that supports the general proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact. Indeed, it is "well-established ... that expert testimony concerning an ultimate issue is not per se improper." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir.2004) (internal quotation marks omitted) (alterations in original). Although "[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence .... an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact." United States v. Lockett, 919 F.2d 585, 590 (9th Cir.1990); see also Fed.R.Evid. 704(a). Accordingly, under AEDPA, Petitioner's claims to the contrary must be rejected. See 28 U.S.C. § 2254(d); Van Patten, *supra,* 552 U.S. at 126; Panetti, *supra,* 551 U.S. at 953; Musladin, *supra,*

549 U.S. at 76.

To the extent Petitioner argues his trial was rendered fundamentally unfair by the introduction of the expert's testimony, his claim is meritless. As previously stated, there was substantial evidence of Petitioner's specific intent to commit the murder to promote his gang, apart from the expert's testimony. Petitioner identified himself at the party as a member of the "NFL" or "Nortenos for Life," a subset of the Norteno criminal street gang. (RT[4] 296-297; 363.) Petitioner also had several tattoos on his body signifying membership in the Norteno gang. (RT 687-689.) A gang expert testified that based on Petitioner's contacts with law enforcement and his tattoos, Petitioner was a member of the Norteno criminal street gang. (RT 698.) During the party, Petitioner approached Richard Wendling and asked if Wendling was a member of the rival Sureno gang based on Petitioner's belief that Wendling had made a Sureno gang sign. (RT 301-302, 368.) When John Pennington asked Petitioner, "What are you trying to start?" Petitioner responded, "Fuck these fools." (RT 630.) Later, Pennington overheard Petitioner say on the telephone, "Let me get a gun. These fools are messing with me." (RT 631.) Approximately 15 to 20 members of the rival gang West Coast Outlaws congregated outside the party. (RT 371.) Petitioner and his codefendant then began exchanging threats and gang slurs with the other gang members. (RT 371-372, 433, 653.) Petitioner and his codefendant then left after announcing they would be back. (RT 222, 247.) Petitioner and his codefendant later returned to the party with a firearm, whereupon Petitioner began firing indiscriminately into the crowd. An expert testified that such an act would be directly related to the central gang motive of responding to disrespect by rival gang members with extreme violence in order to exert power and control and to cause fear and intimidation in the community. (RT 703-704.)

In light of the overwhelming evidence of Petitioner's specific intent to promote, further or assist his criminal street gang, he fails to show that deliberations were tainted by the improperly admitted opinion of the expert on specific intent. Accordingly, Petitioner fails to demonstrate that his federal due process rights were violated. Habeas relief is unavailable and the claim

---

[4]"RT" refers to the Reporter's Transcript on Appeal.

should be rejected. 28 U.S.C. § 2254(d).

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 26, 2011**          **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE